# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00439-COA

**COLLINS J. LANDRY**                                                                 **APPELLANT**

**v.**

**VALLMAN McCOMB MALL, LLC**                                            **APPELLEE**

DATE OF JUDGMENT:                 03/02/2022
TRIAL JUDGE:                            HON. MICHAEL M. TAYLOR
COURT FROM WHICH APPEALED:    PIKE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         MICHAEL SCOTT BISHOP
ATTORNEY FOR APPELLEE:          ERIC REYNOLDS PRICE
NATURE OF THE CASE:              CIVIL - PERSONAL INJURY
DISPOSITION:                      AFFIRMED - 08/29/2023
MOTION FOR REHEARING FILED:

### BEFORE BARNES, C.J., McCARTY AND SMITH, JJ.

### SMITH, J., FOR THE COURT:

¶1.     Collins J. Landry slipped and fell on a freshly mopped floor in a McDonald's restaurant. He subsequently asserted a premises-liability claim alleging that an employee acted negligently by violating the company's mopping procedures and causing his injuries. Following discovery and a hearing, the trial court granted summary judgment to the company. On appeal, Landry argues that there are genuine issues of material fact as to the creation of a dangerous condition and the adequacy of the company's warning of the conditions. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On the evening of August 13, 2018, Landry entered a McDonald's restaurant in McComb, Mississippi, owned by Vallman McComb Mall LLC (Vallman). At the time, a

McDonald's employee, Ricky Wells, was in the process of mopping and cleaning the floors. Clear video surveillance from the record showed Landry and his son entered the building and started walking toward the restrooms. As they entered, they traveled immediately next to Wells and bright yellow signs warning of wet floors before turning toward the restroom and then slipping and falling to the ground.

¶3. On September 18, 2020, Landry filed suit for his injuries against Valluzzo Companies LLC, in the Circuit Court of Pike County. After discovering that Valluzzo was not the correct defendant, Landry filed an amended complaint against Vallman on March 11, 2021. Both parties engaged in discovery, and Vallman took the depositions of Landry and his wife. On December 31, 2021, Vallman filed its motion for summary judgment. Landry filed his response in opposition on January 31, 2022. Vallman then filed its rebuttal on February 17, 2022. Thereafter, on February 28, 2022, the circuit court conducted a hearing on the summary judgment motion. The circuit court entered its ruling on the record and concluded "that there's no genuine issue of material fact and that there's been no demonstration of negligence or failure to warn on the part of [Vallman]." The court granted Vallman's motion for summary judgment on Landry's premises-liability action for the slip-and-fall claim.

## STANDARD OF REVIEW

¶4. "We apply a de novo standard of review of a trial court's grant or denial of a motion for summary judgment." *Hill v. Cent. Sunbelt Fed. Credit Union*, 349 So. 3d 1181, 1183 (¶4) (Miss. Ct. App. 2022). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Haggard v. Wal-Mart Stores Inc.*, 75 So. 3d 1120, 1124 (¶8) (Miss. Ct. App. 2011) (quoting M.R.C.P. 56(c)). Summary judgment is proper "where the non-movant fails to establish the existence of an essential element of that party's claim." *Id.* (quoting *Pigg v. Express Hotel Partners*, 991 So. 2d 1197, 1199 (¶4) (Miss. 2008)). But "[t]he existence of a genuine issue of material fact will preclude summary judgment." *Frazier v. McDonald's Restaurants of Miss. Inc.*, 102 So. 3d 341, 343 (¶7) (Miss. Ct. App. 2012) (quoting *Pigg*, 991 So. 2d at 1199 (¶4)).

## DISCUSSION

### I.      Summary Judgment Standard

¶5.      "To withstand summary judgment, the nonmoving party must produce significant probative evidence of a genuine issue for trial." *McCullar v. Boyd Tunica Inc.*, 50 So. 3d 1009, 1011 (¶10) (Miss. Ct. App. 2010). The "'the nonmoving party may not rest upon the mere allegations or denials of his pleadings; his response must set forth specific facts showing that there is a genuine issue for trial.'" *Thomas v. Boyd Biloxi LLC*, 360 So. 3d 204, 210 (¶18) (Miss. 2023) (quoting *Buckel v. Chaney*, 47 So. 3d 148, 153 (¶ 10) (Miss. 2010)). But this Court "cannot try issues of fact"; rather, we "may only determine whether there are issues to be tried." *Venture Inc. v. Harris*, 307 So. 3d 427, 432 (¶15) (Miss. 2020). "Issues of fact . . . are present where one party swears to one version of the matter in issue and another says the opposite." *Haggard*, 75 So. 3d at 1124 (¶8) (citing *Moss v. Batesville Casket Co.*, 935 So. 2d 393, 398 (¶17) (Miss. 2006)).

¶6.    "On a summary judgment motion, [the defendant], as the moving party, 'bears the burden of *persuading* the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, [it] is entitled to judgment as a matter of law.'" *Thomas*, 360 So. 3d at 210 (¶17) (quoting *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (¶11) (Miss. 2013)). The plaintiff, "meanwhile, 'carries the burden of *producing* sufficient evidence of the essential elements of her claim at the summary-judgment stage, as she would carry the burden of production at trial.'" *Id.* (quoting *Karpinsky*, 109 So. 3d at 89 (¶11)).

¶7.    Furthermore, "[t]he evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should be entered in his favor. Otherwise, the motion should be denied." *Venture*, 307 So. 3d at 432 (¶15) (quoting *Double Quick Inc. v. Moore*, 73 So. 3d 1162, 1165 (¶7) (Miss. 2011)).

¶8.    To withstand Vallman's motion for summary judgment, Landry must present sufficient probative evidence to show a genuine issue of material fact on an essential element of his claim. Vallman, as the moving party, bears the burden of persuasion, and Landry, as the non-moving party, bears the burden of production. We must view the evidence in the light most favorable to Landry and determine whether Vallman is entitled to judgment as a matter of law.

## II.    Premises-Liability Claim

¶9.    "Premises liability is a 'theory of negligence that establishes the duty owed to someone injured on a landowner's premises as a result of "conditions or activities" on the

4

land[.]'" *Thomas*, 360 So. 3d at 213 (¶33) (quoting *Johnson v. Goodson*, 267 So. 3d 774, 777 (¶11) (Miss. 2019)).[1] A business "owner . . . is 'only liable for injuries caused by a condition that is unreasonably dangerous.'" *Overpeck v. Roger's Supermarket LLC*, No. 1:12-cv-124-SA-DAS, 2013 WL 4500469, at *2 (N.D. Miss. Aug. 21, 2013) (quoting *Parker v. Wal-Mart Stores Inc.*, 261 F. App'x 724, 725-26 (5th Cir. 2008) (unpublished)).

¶10.    "To prevail in a negligence action, such as a premises-liability case, the plaintiff must prove each element of negligence: duty, breach of that duty, proximate causation, and damages or injury." *Venture*, 307 So. 3d at 432 (¶19) (quoting *Bailey Lumber & Supply Co. v. Robinson*, 98 So. 3d 986, 993 n.3 (Miss. 2012)).

¶11.    Mississippi courts employ "a three-step process in determining premises liability: 'First, we must determine whether the injured party was an invitee, licensee, or a trespasser at the time of the injury. Next, we must determine what duty was owed to the injured party by the business owner/operator. Finally, we must determine whether that duty was breached.'" *Haggard*, 75 So. 3d at 1124 (¶9) (quoting *Rod v. Home Depot USA Inc.*, 931 So. 2d 692, 694 (¶9) (Miss. Ct. App. 2006)).

¶12.    "[T]o determine the duty of care owed by an owner or occupier of land to entrants on the property, we classify the entrants based upon common-law distinctions between trespassers, licensees, and invitees." *Freeman v. CLC of Biloxi LLC*, 119 So. 3d 1164, 1168 (¶13) (Miss. Ct. App. 2013) (citing *Wilson v. Baptist Mem'l Hosp.-N. Miss. Inc.*, 93 So. 3d

___

[1] "In brief, the test of liability is not danger, but negligence, which is the failure of defendant to take such reasonable care as should be taken by prudent men." *Wallace v. J. C. Penney Co.*, 236 Miss. 367, 377, 109 So. 2d 876, 880 (1959).

48, 50 (¶6) (Miss. Ct. App. 2011)). "[A]n invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage[.]" *Venture*, 307 So. 3d at 433 (¶20) (quoting *Leffler v. Sharp*, 891 So. 2d 152, 156 (¶11) (Miss. 2004)). Here, neither party disputes that on the day in question, Landry was an invitee of the McDonald's restaurant Vallman owned.

¶13.    The next step is to determine whether Vallman owed a duty to Landry as an invitee. "A landowner owes a business invitee a duty of reasonable care for the invitee's safety." *Hill*, 349 So. 3d at 1184 (¶6) (quoting *Moore v. Rouse's Enters. LLC*, 219 So. 3d 599, 602 (¶7) (Miss. Ct. App. 2017)).[2] The duty of reasonable care "owed by a premises owner to a business invitee is the 'duty to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition.'" *Id*. Additionally, "the occupant or owner [also] has a duty to warn the invitee of dangerous conditions if they are not readily apparent, of which the occupant knows or should reasonably know through the exercise of reasonable care." *Grammar v. Dollar*, 911 So. 2d 619, 624 (¶12) (Miss. Ct. App. 2005). In other words, "[a] business owner owes a duty to an invitee to keep the premises in a reasonably safe condition *and* to warn the invitee of dangerous conditions that are not readily apparent." *Venture*, 307 So. 3d at 433 (¶22) (emphasis added) (quoting *Clinton Healthcare LLC v. Atkinson*, 294 So. 3d 66, 71 (¶9) (Miss. 2019)). We note, however, that the operator of the "business 'is not

---

[2] "The duty of 'reasonable care' is not absolute care; it's qualified. 'Reasonable' is defined as 'fair, proper, just, moderate, suitable under the circumstances.'" *Evans v. United States*, 824 F. Supp. 93, 97 (S.D. Miss. 1993) (quoting Black's Law Dictionary 1265 (6th ed. 1990)). Reasonable care has also been explained as meaning "that degree of care which a person of ordinary prudence would exercise in the same or similar circumstances." *Id*.

required to keep the premises *absolutely* safe, or in such a condition that *no* accident could possibly happen to a customer.'" *Hill*, 349 So. 3d at 1185 (¶6) (emphasis added) (quoting *Stanley v. Morgan & Lindsey Inc.*, 203 So. 2d 473, 476 (Miss. 1967)). Rather, "[t]he duty of the proprietor is to 'eradicate the known dangerous situation within a reasonable time or to exercise reasonable diligence in warning those who were likely to be injured because of the danger.'" *Scott v. Wal-Mart Stores E. Inc.*, No. 207-cv-41-KS-MTP, 2008 WL 346096, at *4 (S.D. Miss. Feb. 6, 2008).[3]

¶14.    Furthermore, "[b]usiness owners are not strictly liable for injuries occurring on the premises, nor are they insurers of their invitees' safety." *McCullar*, 50 So. 3d at 1012 (¶14); *see also Frazier*, 102 So. 3d at 343 (¶11) ("The business owner is not an insurer against all injuries." (internal quotation marks omitted)). "The invitee is still required to use in the interest of his own safety that degree of care and prudence which a person of ordinary intelligence would exercise under the same or similar circumstance." *Venture*, 307 So. 3d at 433 (¶24) (quoting *Fulton v. Robinson Indus. Inc.*, 664 So. 2d 170, 175 (Miss. 1995)).

### A.    Whether Vallman's employee was negligently mopping and creating a dangerous condition.

¶15.    Landry alleges that a dispute existed regarding Vallman's employee Wells's mopping in a manner that violated Vallman's rules and procedures for mopping and cleaning the floors. He based his claim on evidence in the surveillance video and screenshots of the video,

---

[3] "The duties are separate and must be analyzed separately." *Frazier*, 102 So. 3d at 343 (¶11). "These two duties—(1) to keep the premises reasonably safe, and (2) to warn of hidden dangers—are separate. The breach of either duty supports a claim of negligence. Each must be separately analyzed." *Mayfield v. The Hairbender*, 903 So. 2d 733, 738 (¶20) (Miss. 2005).

as well as the provisions within the company's procedural documents Vallman provided in discovery.

¶16.    To satisfy the burden of proof for a breach "in a slip-and-fall case, the invitee must (1) show that some negligent act of the defendant caused his injury; or (2) show that the defendant had actual knowledge of a dangerous condition and failed to warn the plaintiff; or (3) show that the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to the defendant, in that the defendant should have known of the dangerous condition." *Hill*, 349 So. 3d at 1184 (¶6) (quoting *Grammar*, 911 So. 2d at 624 (¶12)).

¶17.    "Under the first theory, [the plaintiff] . . . must show 'that the dangerous condition was the result of an affirmative act of the proprietor'" or an employee. *Peters v. Fred's Stores of Tenn. Inc.*, 760 F. App'x 341, 343 (5th Cir. 2019) (unpublished) (internal quotation marks omitted). "In order to survive the motion for summary judgment, [the plaintiff] needed to provide evidence that a negligent act of [the defendant] caused her injury[.]'" *Rod*, 931 So. 2d at 695 (¶12) (quoting *Byrne v. Wal-Mart Stores Inc.*, 877 So. 2d 462, 465 (¶6) (Miss. Ct. App. 2003)).

¶18.    In this case, part of Landry's claim is based upon his argument that the "dangerous condition" that caused his fall was the result of Wells's negligent acts, in that he violated the company's cleaning and mopping policies: (1) he mopped the entirety of the restaurant dining room floor at once; (2) he began mopping at 5 p.m. during one of the restaurants busiest times; (3) he did not use a dry mop to dry the floors after wiping them down with the wet

mop; and (4) he did not place "wet floor" signs around the perimeter of the area being mopped. Landry insists that Wells did not mop the floor in accordance with the company policies and that this purported "improper mopping" constituted negligence for which Vallman could be held liable for Landry's slip and fall.

¶19. "The plaintiffs fail to cite, nor is this court aware of, any Mississippi statute or jurisprudence in the premises liability context that finds that a premises owner can be held liable simply by virtue of its violation of its own internal safety policies." *Parker v. Wal-Mart Stores Inc.*, 251 F.R.D. 222, 227 (S.D. Miss. 2008).[4]

¶20. Also, no Vallman employee, including Wells, was ever deposed. The record includes a surveillance video from the day in question around the time of Landry's fall. However, the video shows that Wells did in fact mop the dining room floor in segments and took a break between each segment. The video evidence does not support Landry's allegation that Wells mopped the *entire* restaurant floor at once. This Court has previously explained, "We simply may not rely upon unsupported, conclusory allegations to defeat a motion for summary judgment where there are no issues of material fact." *Jacox v. Circus Circus Miss. Inc.*, 908 So. 2d 181, 184 (¶6) (Miss. Ct. App. 2005) (quoting *Richardson v. Oldham*, 12 F.3d 1373, 1378-79 (5th Cir. 1994)). "Unfortunately for [Landry], bare allegations cannot defeat a

---

[4] "[T]he owner or person in control of a building, such as here under consideration, must exercise reasonable care to so . . . maintain the floors therein as that they shall be reasonably safe for those who have the right to use them, when and while the users are themselves exercising reasonable care in that use." *Daniel v. Jackson Infirmary*, 173 Miss. 832, 163 So. 447, 448 (1935); *see also Frazier*, 102 So. 3d at 345 (¶24) ("Periodic mopping of a heavy-traffic, drink-dispenser area is a necessary and reasonable precaution by a restaurant.").

motion for summary judgment." *Id*.

¶21. Second, the video entered into evidence is only a portion of the surveillance tape from that day and begins when Wells is in the middle of his mopping process. Although Landry claims the mopping occurred at one of the busiest times, the record contains a sales report Vallman provided that lists the number of sales per hour on the day of Landry's fall. The sales report shows that Vallman's highest hourly sales that day were at 10:00 a.m., 1:00 p.m., and 8:00 p.m. The beginning of the video shows there were no customers in the dining areas, and the only people walking through the restaurant were employees. Therefore, Landry did not provide evidence to establish a genuine issue of material fact that it was during one of the busiest times for this restaurant on the day in question.

¶22. Third, the area where Wells was mopping at the time of Landry's fall was an area in the middle of the main dining room, the side dining room, and the entrance. There was a bright yellow "wet floor" sign on the left side of this area, and there was another bright yellow "wet floor" sign before the front side of this area located just steps away from the restaurant's entrance and immediately within the path Landry took. As such, the video establishes that Wells placed "wet floor" warning signs around the area he was mopping where Landry fell.

¶23. We find that Landry did not come forward with sufficient probative evidence demonstrating Vallman's employee acted negligently in his method of mopping the floor that created a genuine issue of material fact whether a dangerous condition and caused Landry to fall. Therefore, summary judgment was proper regarding Vallman's compliance with its

10

duty to maintain the premises in a reasonably safe condition.

### B. Whether Vallman's employee had not properly warned Landry of the dangerous condition in the area of the side dining room.

¶24.    The second part of Landry's premises-liability claim is an allegation that Vallman failed to *properly* warn him of the dangerous condition of the floors created by the act of mopping the floors. Specifically, Landry argues that "wet floor" signs were not placed in a "perimeter fashion" around the mopped areas as described by Vallman's "Procedures for Cleaning Floors and Baseboards." Landry further argues that the signs were not visible to him at the place where he fell. He asserts that because there were no signs around the perimeter of that area where he fell, he had no way of knowing that the side dining room floor was wet.[5] A plaintiff may recover in a slip-and-fall case if "the defendant had actual knowledge of the dangerous condition, but failed to warn the plaintiff[.]" *Haggard*, 75 So. 3d at 1125 (¶13) (quoting *Rod*, 931 So. 2d at 694-95 (¶10)).

¶25.    In a case factually similar to the one before us, another patron was injured after slipping and falling on a freshly mopped floor in a different McDonald's restaurant. *Frazier*, 102 So. 3d at 342 (¶4). In that case, a McDonald's employee placed two signs at the beginning and end of the freshly mopped area. *Id*. "Frazier walked pasted the first warning sign[,]" "crossed almost the entire mopped area[,]" and "[t]hen, Frazier fell onto the second warning sign as she turned to enter the dining area." *Id*. The plaintiff filed a premises-liability

---

[5] He further claims, "In other words, even had Mr. Landry seen one of the wet floor signs in the main lobby, he was starting to walk through the side dining area when he fell, where there were no visible wet floor signs prior to encountering the freshly mopped area."

11

action against McDonald's for failure to keep the premises in a reasonably safe condition and failure to warn of a dangerous condition that was not readily apparent. *Id*. at (¶5). The defendant filed a motion for summary judgment arguing that it performed its duty to warn by its placement of "wet floor" signs and that Frazier failed to produce evidence that the signs were hidden or inadequate. *Id*. at 342-43 (¶6). In affirming the trial court's decision to grant summary judgment, this Court found that a review of "[t]he video in the record, attached to the motion for summary judgment and the response, clearly showed the presence of the signs and Frazier's walk by the first sign toward the second sign. . . . [Also,] Frazier admitted that she saw the first sign when she entered the mopped area." *Id.* at 345 (¶25). This Court went further and found that "McDonald's also had a duty to warn of hidden dangers, such as a freshly mopped floor[,]" and that "McDonald's complied with its duty to warn by the placement of signs at each end of the mopped area." *Id*.

¶26.    Similarly, in *Scott*, 2008 WL 346096, at *1, the plaintiff was shopping at Wal-Mart when she walked past an ice cooler and slipped and fell. The plaintiff filed a premises liability claim against Wal-Mart, "contend[ing] that the defendant actually caused the water in which the plaintiff fell to be on the floor but failed to warn the plaintiff of the dangerous condition." *Id* at *3. Wal-Mart filed a motion for summary judgment challenging the plaintiff's negligence claim and the ability to prove a breach of duty. *Id*. The defendant presented evidence from a Wal-Mart security camera video showing "that after filling the ice cooler, its employees cleaned the area around the ice cooler, placed a non-slip mat in front of it, and placed a wet floor sign in the area." *Id*. The defendant "argue[d] that these actions

12

compl[ied] with its duty to keep the area reasonably safe and further to warn of any unseen potential hazard." *Id*. at \*4. The *Scott* court found that "[t]he admissible evidence indicates that the defendant used reasonable care in cleaning up the area around the ice cooler after loading it and then placed a warning sign in the area to alert customers to unseen hazards." *Id*. The court stated, "That is all that is required of a premises owner" and "conclude[d] that there is no genuine dispute of any material fact upon which a rational trier of fact could find that the defendant breached its duty of care to the plaintiff." *Id*.

¶27. Landry concedes that the surveillance video in the record irrefutably shows that there were four bright yellow "wet floor" signs in the restaurant at the time in question. As stated previously, the video establishes that Landry entered the restaurant and walked across an anti-slip mat by the door and directly past one of the bright yellow "wet floor" signs. He turned to the right and headed in the direction of Wells, who was visibly holding a mop and standing immediately in front of Landry in the freshly mopped area between the counter and side dining room. The video shows that as Landry walked around Wells, Landry walked immediately next to the second yellow sign. Landry then turned and walked toward the side dining room beyond Wells where he slipped and fell. We further note that immediately before Landry's fall, at least three other patrons walked through the same exact area and traversed it without difficulty.

¶28. Pursuant to *Frazier*, Vallman had a duty to warn of the danger of a freshly mopped floor created by its employee. Landry admits he passed two yellow "wet floor" signs before entering the mopped area. Vallman complied with its duty to warn by the placement of

13

multiple signs around the path crossing into the mopped area. Wells specifically placed "wet floor" signs in the area where the mop was used and alerted customers to the hazard of the wet, slippery floor.

¶29.    Landry has not offered evidence demonstrating that along his path walking through the restaurant, Vallman failed to give him any warning about potentially wet floors. The video undoubtedly shows that defendant warned Landry of the condition of the floor from the moment that he walked in the door. Further, almost immediately after walking in, Landry encountered an employee holding a mop and standing in the path of the direction that he was going. We find that Landry has failed to produce evidence that the warning signs were hidden or were incompetent in advising customers as to the danger of wet floors in that area of the premises. Landry failed to present sufficient probative evidence raising a genuine dispute of any material issue upon which a rational trier of fact could find that Vallman failed to comply with its duty to warn him of dangerous conditions of which it has actual knowledge.[6]

---

[6] We also find the following treatise and cases from other jurisdictions to be persuasive. "The fact that a person slips and falls on a floor which is in the process of being cleaned does not establish negligence, especially where the manner in which it is done is not shown to be improper." 65A C.J.S. *Negligence* § 665 (updated August 2023). Further, in *Melancon v. Popeye's Famous Fried Chicken*, 59 So. 3d 513, 515-16 (La. Ct. App. 2011), summary judgment was found to be proper where two "wet floor" signs were present in the area where an employee was mopping during business hours and the patron walked directly past the signs and the employee. "She then walk[ed] past a 'wet floor' sign and directly past the employee who is mopping the floor. The only explanation for Melancon's lack of awareness regarding the wet floor is her inattentiveness." *Id*. Further, "[j]urisprudence has specifically found that mopped floors do not create an unreasonable risk of harm when the appropriate signage is used to warn patrons of the condition of the floor." *Id.; see also Stockstill v. Prime Foods Sys. Inc.*, 453 S.E.2d 784, 785 (Ga. Ct. App. 1995) (The placement of four signs around the dining area being mopped during business hours "was reasonable

## CONCLUSION

¶30. Mopping and cleaning the floors of the restaurant was reasonable and was conducted by Vallman's employee in a reasonable manner. Further, Vallman's employee provided Landry with multiple warnings that the floor he was walking across may have been wet and in a dangerous condition. Landry failed to present sufficient and probative evidence to establish that a genuine issue of material fact existed and precluded summary judgment of his premises-liability claim. Therefore, we affirm the circuit court's order granting summary judgment in favor of Vallman.

¶31. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND EMFINGER, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

---

and ordinary care on [the appellee's] part, even assuming [the appellant] did not have equal knowledge of the hazard. To say otherwise would render [the appellee] an insurer of its customers' safety, which (it) is not in this state."); *see also Cronce v. Schuetz*, 1 N.W.2d 789, 790 (Wis. 1942) ("The time-honored use of the mop even in cleaning a public building has not been outlawed. The argument that the mopping of the hallways should have been deferred until after the close of business hours is without merit.").